IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMAINE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:15-cv-00523-NJR |
| | ) | |
| ALEX MOLL, | ) | |
| TREVOR ROWLAND, | ) | |
| K. HUNTER, | ) | |
| C/O WANGLER, | ) | |
| DONALD D. GAETZ, | ) | |
| S.A. GODINEZ, and | ) | |
| JOHN DOE #1, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Jamaine Williams is currently incarcerated at the Pinckneyville Correctional Center in Pinckneyville, Illinois. (Doc. 19 at 1.) Proceeding *pro se*, Williams has filed an amended complaint under 42 U.S.C. § 1983, alleging that corrections officers at Pinckneyville improperly strip searched him, attacked him, and failed to provide him with medical care for the injuries he incurred during the attack—all in violation of his constitutional rights. (*Id.* at 10-17.) Williams also claims that higher-level officials at Pinckneyville and beyond were involved, as they either witnessed the attack but did not help or promulgated policies that led to the attack. (*Id.*) Williams seeks compensatory damages and punitive damages. (*Id.* at 18.)

This matter is now before the Court for a review of Williams's amended complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During the § 1915A review, the court "shall identify cognizable claims or

dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim" or if it "seeks monetary relief from a defendant who is immune."

## Background

According to the complaint now before the Court, Williams was housed at Pinckneyville as of August 2013. (Doc. 1 at 9.) On August 23, 2013, a mixture of Menard and Pinckneyville guards arrived at Pinckneyville to conduct a "shakedown" search of the prison. (*Id.*) Officers Moll and Rowland searched Williams's cell, while Officer Hunter "stood on" to oversee the search. (*Id.*) At the beginning of the search, Moll and Rowland ordered Williams to remove his clothes, squat down, bend over, and "spread [his] butt cheeks." (*Id.*) Moll and Rowland then told Williams to lift his genitals up, and subsequently told him to use "the same fingers" to hold open his mouth for an inspection. (*Id.*) As the search continued, Moll and Rowland "taunt[ed]" Williams about how he was "made to stick his hands in and around his butt crack, [and] then made to touch on his genitals before being ordered to thereafter place [his] hands in his mouth." (*Id.*)

Towards the end of the search, Williams asked Hunter, Moll, and Rowland why he had to "stick [his] hands in [his] mouth after being forced to touch [his] anal and genital area with the same hands." (*Id.*) The three allegedly became "upset" with Williams's question; they ordered Williams to put his clothes on and then "tightly" handcuffed him. (*Id*. at 10.) The trio then took him outside of his cell and began "repeatedly" pushing his "head into the wall." (*Id.*) During the alleged assault, Rowland asked Williams if he had "something to say" as Rowland "slammed [Williams] on the dayroom floor while handcuffed." (*Id.*) Moll and Rowland then picked Williams up while Hunter grabbed Williams around the neck and "started to choke" him, causing Williams to "partially" lose consciousness. (*Id.*) The trio then began to move Williams out of

the housing unit; on the way, Williams says that Hunter choked him "even more" as Moll and Rowland "started to punch [him] in [his] sides over and over." (*Id.* at 11.)

After the alleged attack ended, Williams was escorted to segregation by the three officers. (*Id.*) Williams asked each of the officers for medical care for his injuries, but the officers refused. (*Id.*) Williams also filed requests with unspecified individuals in the prison's health care unit asking for medical care and approached a John Doe nurse in segregation, but no medical attention was provided. (*Id.* at 11-12.) A little under a month after the assault, Williams also wrote a grievance concerning the search and the attack, which was ultimately denied. (*Id.* at 11.)

On May 8, 2015, Williams filed his initial § 1983 complaint in this Court, seeking to add another Pinckneyville prisoner as a co-plaintiff. (Doc. 1.) On May 29, 2015, the initial complaint was dismissed without prejudice on Rule 8 grounds, and Williams's purported co-plaintiff was dismissed from the case because he did not sign Williams's initial complaint. (Doc. 9.) In June 2015, Williams filed a First Amended Complaint and then a motion to "correct" his complaint. (Docs. 10 & 13.) On September 15, 2015, the Court advised Williams that he could not correct his complaint in a piecemeal fashion and gave him a short period to submit a Second Amended Complaint incorporating the allegations in his First Amended Complaint and his motion to correct. (Doc. 18.) On September 30, 2015, Williams filed a Second Amended Complaint concerning the August 2013 events at Pinckneyville. (Doc. 19.)

## Discussion

The Court begins its § 1915A review with a note about the parties at issue in this case. Throughout his amended complaint, Williams refers to the conduct of some individuals not named in his caption or his defendant list—he says that he "wrote various requests" to unspecified individuals with the prison's health care unit asking for medical attention, but did not

receive care. Given that these individuals were not designated as parties in Williams's defendant list but another John Doe was, it seems unlikely that Williams wishes to raise discrete claims against these unspecified individuals. Regardless, because these parties are not listed in the caption by name or by Doe designation, they will not be treated as defendants in this case, and any claims against them should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendant must be "specif[ied] in the caption").

Turning to Williams's complaint, the Court finds it appropriate to divide the claims in the complaint into the following counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court.

> **COUNT 1:** Moll, Rowland, and Hunter performed an improper search on Williams, and in doing so applied the policy directives of Wangler, Gaetz, and Godinez. This conduct violated Williams's Eighth Amendment rights.
>
> **COUNT 2:** Moll, Rowland, and Hunter performed an improper search on Williams, and in doing so applied the policy directives of Wangler, Gaetz, and Godinez. This conduct violated Williams's Fourth Amendment rights.
>
> **COUNT 3:** Moll, Rowland, and Hunter exposed Williams to excessive force, and in doing so applied the policy directives of Wangler, Gaetz, and Godinez. This conduct violated Williams's Eighth Amendment rights.
>
> **COUNT 4:** Gaetz and Wangler failed to intervene during the assault by Moll, Rowland, and Hunter, in violation of Williams's constitutional rights.
>
> **COUNT 5:** Moll, Rowland, Hunter, Wangler, Gaetz, and John Doe #1 failed to secure treatment for Williams's injuries, in violation of the Eighth Amendment.
>
> **COUNT 6:** Godinez, Gaetz, Wangler, and John Doe #1 negligently or wrongfully handled Williams's prison grievance, in violation of his rights.

Williams's complaint starts with allegations linked to his strip search, so the Court will start there (**Count 1**). To put forth an illegal strip or cavity search claim, a prisoner must allege facts tending to show that a search lacked a "valid penological reason" or that the search was "conducted in a harassing manner intended to humiliate and cause psychological pain." *Mays v.*

Case 3:15-cv-00523-SMY-SCW Document 24 Filed 10/14/15 Page 5 of 11 Page ID #182

*Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). Circumstances dictate whether a search was legitimate or intended to humiliate a prisoner—"sexual ridicule and female spectators during a strip search can reasonably lead to the conclusion that the search was intended to humiliate," as can the lack of any "valid reason for a group strip search." *May v. Trancoso*, 412 F. App'x 899, 902–03 (7th Cir. 2011). Here, Williams claims that the method used to search him and the comments made during the search suggest some intent to humiliate, and that is enough to state an arguable claim at preliminary screening. Accordingly, **Count 1** may proceed as to Moll and Rowland, who conducted the search, and Hunter, who allegedly directed it. In addition, **Count 1** may proceed as to Wangler, Gaetz, and Godinez, as Williams claims that the humiliating search method was conducted pursuant to policy directives issued by those individuals. *See Doyle v. Camelot Care Ctrs.*, 305 F.3d 603, 615 (7th Cir. 2002) (allegations that senior officials were "responsible for creating the policies, practices and customs that caused the constitutional deprivations" sufficient to state a claim against those officials at the early stage of a case).

While the Eighth Amendment aspect of Williams's search claim may proceed, his Fourth Amendment claim (**Count 2**) must be set aside at the outset. As a general matter, prisoner search claims are evaluated under the Eighth Amendment rather than the Fourth Amendment. *See*, *e.g.*, *Payette v. Hoenisch*, 284 F. App'x 348, 353 (7th Cir. 2008) ("[W]e have held that prisoner strip-search claims are better addressed under the Eighth Amendment."); *Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 697 (7th Cir. 1998) ("[R]egardless of how one views the Fourth Amendment in this context, it is the Eighth Amendment that is more properly posed to protect inmates from unconstitutional strip searches, notably when their aim is punishment, not legitimate institutional concerns."). Especially where the facts underlying the claims are the same, the Fourth Amendment claim is subject to dismissal. *Payette*, 284 F. App'x at 353. Here,

Page **5** of **11**

Williams relies on the same facts for the Fourth Amendment search claim as he does for the Eighth Amendment search claim, and his Eighth Amendment search claim is proceeding beyond preliminary review. As such, **Count 2** must be dismissed without prejudice.

Williams goes on to claim that Moll, Rowland, and Hunter exposed him to excessive force (**Count 3**). To put forth an excessive force claim, a prisoner must show that an assault occurred and that it was "carried out maliciously and sadistically, rather than as part of a good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010). Critically, not "every malevolent touch by a prison guard gives rise to a federal cause of action"—an inmate who complains of a "'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Here, Williams has alleged that he was punched and choked, and that is enough to put forth arguable excessive force claims. Williams has also alleged that the force employed was done so based on policy directives from Wangler, Gaetz, and Godinez, and that is sufficient to yoke them into these claims, at least at screening. *See Doyle*, 305 F.3d at 615. So **Count 3** may proceed as to Moll, Rowland, Hunter, Wangler, Gaetz, and Godinez.

Williams next alleges that Wangler and Gaetz were present during the alleged assault by Moll, Hunter, and Rowland yet failed to protect him, in violation of his rights (**Count 4**). To state a failure to protect claim, a prisoner must allege that an officer was present during the application of excessive force and had "reason to know" that "excessive force was being used" or that a "constitutional violation has been committed," and that the officer "had a realistic opportunity to intervene to protect the harm from occurring." *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001). When the Court construes Williams's complaint in a liberal fashion, Williams has alleged that Gaetz and Wangler observed the assault against him by the

guards yet failed to intervene, and that is enough to state an arguable claim for purposes of screening review. Accordingly, **Count 4** may proceed as to Officer Wangler and Warden Gaetz.

Williams goes on to claim that Moll, Rowland, Hunter, Wangler, Gaetz, and John Doe #1 knew of his need for medical care related to the assault yet failed to secure any treatment (**Count 5**). To state a medical claim under the Eighth Amendment, a plaintiff must satisfy a two-part test: he must first allege facts tending to show that his condition "was objectively serious," and must then allege that the named defendants acted with deliberate indifference towards that condition. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). While Williams's complaint is not specific as to his injuries, he claims that he was punched, choked, and otherwise assaulted, and those types of injuries can qualify as serious at the preliminary screening stage. *See Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996) (cellmates' cuts, severe muscular pain, and eye and skin irritation from beating could qualify as a serious medical condition). In addition, the circumstances of the failure to treat could suggest deliberate indifference on the part of Moll, Rowland, and Hunter, who allegedly attacked Williams. *See id.* at 917 ("Beating a person in violation of the Constitution should impose on the assailant a duty of prompt attention to any medical need to which the beating might give rise . . . ."). Deliberate indifference might also exist as to Gaetz, Wangler, and John Doe #1, who allegedly saw the attack or knew of the injuries yet failed to secure treatment. *See Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015) (failure to "provide adequate medical treatment" can constitute indifference). As such, **Count 5** may proceed as to Moll, Rowland, Hunter, Wangler, Gaetz, and John Doe #1.

As his final claim, Williams alleges that his grievance was not correctly handled and that one individual provided false information in connection with his grievance, thereby violating Williams's right to have his grievance handled appropriately (**Count 6**). This claim must be

dismissed at the gate, as the failure by an official to properly investigate an attack or respond to a prisoner's grievance—on its own—does not violate the United States Constitution. *See, e.g., George v. Williams*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (prisoner had no claim for "failure to investigate" a grievance because there was no "protected liberty interest" in having the grievance "resolved to his satisfaction"). This is true even when a party involved in the grievance process provides false information—a "cover up," standing alone, does not violate federal law. *Vasquez v. Hernandez*, 60 F.3d 325, 329 (7th Cir. 1995); *Kies v. City of Aurora*, 149 F. Supp. 2d 421, 424 (N.D. Ill. 2001). While a prisoner might have a "cover up" claim if an official's conduct blocked his ability to seek "legal redress," *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000), nothing like that is alleged here, so **Count 6** must be dismissed without prejudice.

One closing note concerning the John Doe defendant: this nurse must be identified with particularity before service of the complaint can occur on him. Where a prisoner's complaint states specific allegations describing the conduct of an unknown prison official sufficient to raise a constitutional claim against him, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of the defendant. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, guidelines for discovery aimed at identifying John Doe will be set by the magistrate judge. Once John Doe is identified, Williams shall file a motion to substitute the named individual for the John Doe designate.

**Disposition**

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **MOLL**, **ROWLAND**, **HUNTER**, **WANGLER**, **GAETZ**, and **GODINEZ**.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED without prejudice**.

**IT IS HEREBY ORDERED** that **COUNT 3** shall **PROCEED** against **MOLL**, **ROWLAND**, **HUNTER**, **WANGLER**, **GAETZ**, and **GODINEZ**.

**IT IS HEREBY ORDERED** that **COUNT 4** shall **PROCEED** against **WANGLER** and **GAETZ**.

**IT IS HEREBY ORDERED** that **COUNT 5** shall **PROCEED** against **MOLL**, **ROWLAND**, **HUNTER**, **WANGLER**, **GAETZ**, and **JOHN DOE #1**.

**IT IS FURTHER ORDERED** that **COUNT 6** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **MOLL**, **ROWLAND**, **HUNTER**, **WANGLER, GAETZ**, and **GODINEZ**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the John Doe defendant until such time as Plaintiff has identified him by name in a properly filed amended complaint. It is Plaintiff's responsibility to provide the Court with the name and service address for this individual.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending motions for recruitment of counsel (Docs. 11 & 20) are **REFERRED** to Magistrate Judge Donald G. Wilkerson for consideration.

Further, this entire matter is **REFERRED** to Magistrate Judge Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  October 14, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**